IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEY McKEE, | No. 4:22-CV-01240 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| B. SALAMAN, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JANUARY 11, 2023

Plaintiff Jamey McKee, an inmate confined at the State Correctional Institution Rockview (SCI Rockview), in Bellefonte, Pennsylvania, filed the instant *pro se* action under 42 U.S.C. § 1983. He then filed numerous motions seeking assorted forms of preliminary injunctive relief. Because McKee has failed to comply with the Local Rules of Court and cannot make the difficult showing required to establish a right to a preliminary injunction, the Court will deny his various motions.

I. **BACKGROUND**

McKee is currently housed in the Behavior Management Unit (BMU) at SCI Rockview.[1] He filed the instant Section 1983 lawsuit asserting violations of his First, Eighth, and Fourteenth Amendment rights.[2] His sprawling complaint spans

---

[1] Doc. 6 ¶ 1.
[2] *See generally* Doc. 6.

44 pages and contains over 215 paragraphs.[3]  The gravamen of his lawsuit is that he is purportedly being retaliated against by SCI Rockview officials because he filed a report under the Prison Rape Elimination Act (PREA) in mid-May 2022 alleging that his unit manager had sexually assaulted him.  McKee claims that the retaliation includes being improperly demoted in his BMU phase levels from a level 3 to a level 4,[4] being placed in a "hard" cell (with constant lighting and a "cement bed" and lacking a desk, shelf space, and an electrical outlet) for approximately a month,[5] being denied lunch on a single occasion,[6] being issued two false misconducts,[7] being denied linens for two nights and toilet paper for an unspecified amount of time,[8] and being intentionally placed in harm's way so that he could be assaulted by another inmate while in recreation cages.[9]  This alleged retaliation primarily occurred in May and June 2022.

McKee also claims that multiple prison officials failed to protect him in violation of the Eighth Amendment,[10] exposed him to unconstitutional conditions

---

[3]  *See id.*
[4]  *Id.* ¶¶ 30-31, 34-37, 187.  According to McKee, "The BMU is a minimum 4[-]month program.  Inmates designated to the BMU are expected to advance through the program by phases.  It commences at phase 5 and ends at phase 1[,] which is held [sic] in general population.  Movement to a lower treatment phase is based on the inmate's behavior and compliance with the inmate's Individual Recovery Plan (I.R.P.)."  *Id.* ¶ 20.
[5]  *Id.* ¶¶ 43-51, 188.
[6]  *Id.* ¶¶ 53, 63.
[7]  *Id.* ¶¶ 53, 54, 129-30, 140, 153.
[8]  *Id.* ¶¶ 64-65.
[9]  *Id.* ¶¶ 95-119.
[10] *Id.* ¶¶ 182-85.

of confinement (also in violation of the Eighth Amendment),[11] and infringed his Fourteenth Amendment due process rights.[12] McKee sues nine prison officials: Superintendent Bobbi Jo Salamon, Deputy Superintendent Michael Rowe, BMU unit manager Michael Knapp, Hearing Examiner Christian Collins, and Correctional Officers Willis Holden, John Hayles, Dylan Steberger, Richard Burns, and Nathan Anna.[13]

Following the lodging of his complaint, the Court issued two administrative orders informing McKee that he must either pay the $402 filing fee or submit a properly completed motion for leave to proceed *in forma pauperis*.[14] Due to McKee's failure to comply with those orders, his case was dismissed without prejudice and closed on September 28, 2022.[15]

After successfully moving to reopen his case,[16] McKee began filing a spate of motions seeking various types of preliminary injunctive relief. McKee's motions can be summarized as follows:

- McKee claims that on December 2, 2022, Inmate Manson sexually harassed him in the law library. He requests that the Court "contact defendants['] attorney[]s and order them to take immediate actions to further protect" him from Inmate Manson, and that video footage of the

---

[11] *Id.* ¶¶ 197-200.
[12] *Id.* ¶¶ 201-04. Although McKee cites the "Fourth" Amendment in his complaint, *see id*, it is clear that he is invoking the Due Process Clause of the Fourteenth Amendment.
[13] *Id.* ¶¶ 7-15; Doc. 38 at 2 (providing full names of Defendants).
[14] *See* Docs. 3, 5.
[15] Doc. 11. Prior to the dismissal of his case, McKee had filed a motion for preliminary injunctive relief. Doc. 7. That motion was terminated when his case was dismissed and closed.
[16] *See* Docs. 11, 13, 17.

December 2 incident be preserved.[17]

- McKee alleges that on December 5, 2022, Inmate Barber threatened to assault him and that correctional officers did not take any action. He requests that prison staff be contacted to implement a plan to prevent McKee from being assaulted by Inmate Barber, and that video footage of the December 5 incident be preserved.[18]

- McKee avers that on December 9, 2022, during group activities, other inmates were threatening him with "bodily harm" and that "C.O. Thomas [a nonparty] was laughing and encouraging the inmates' threatening behavior." He requests that the Court contact SCI Rockview administration "to prevent any further harm" and that "defendants' attorneys . . . be notified of this motion for the purpose of finding alternative options to protect" him.[19]

- McKee claims that on December 8, 2022, he reported retaliation to "psych counselor Hall" and then several Defendants "retaliated against [him] by obstructing his progress to graduate" the BMU program. He also claims that, on December 11, 2022, correctional officers "skipp[ed]" him with cleaning supplies and clean bed linens. He requests that "defendants' lawyers . . . contact the Department of Corrections" to "find an immediate resolution to better protect" him and ensure that he receives cleaning supplies and new bed linens.[20]

- McKee alleges that staff are "stealing [his] legal mail" and refusing to allow him to put mail in the outgoing mailbox in "an attempt to obstruct hi[s] access to the courts." He requests that the Court, among other things, contact outside authorities to pursue an external investigation into the alleged mail tampering, and that the Court hold a telephonic hearing so that McKee can voice his concerns regarding the alleged retaliation he claims he is experiencing.[21]

---

[17] Doc. 26.
[18] Doc. 27.
[19] Doc. 28.
[20] Doc. 30.
[21] Doc. 33.

## II.   DISCUSSION

McKee's motions for preliminary injunctive relief will be denied for two reasons.  First, McKee has failed to comply with the Local Rules of Court for his various motions.  Second, he cannot make the difficult showing of entitlement to a preliminary injunction.

### A.   McKee's Filings Do Not Comply with Local Rules

McKee has filed five motions seeking assorted types of injunctive relief but has failed to support those motions with briefs.  Local Rule of Court 7.5 requires that "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion.  If the motion seeks a protective order, a supporting brief shall be filed with the motion.  If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."[22]  Local Rule 7.8 subsequently provides that supporting briefs "shall contain complete citations of all authorities relied upon" and that "[t]he brief of the moving party shall contain a procedural history of the case, a statement of facts, a statement of questions involved, and argument."[23]

None of McKee's filings comply with these rules.  McKee's motions largely contain only allegations and are unsupported by any legal authority.  Notably, none of the motions address whether McKee can satisfy the stringent requirements for

---

[22]   LOCAL RULE OF COURT 7.5 (emphasis supplied).
[23]   LOCAL RULE OF COURT 7.8.

obtaining preliminary injunctive relief. The Court is aware that *pro se* filers are held to a lesser standard than counseled parties, but even *pro se* litigants must comply with the Local Rules and must support their arguments with legal authority.

Therefore, as McKee's five motions fail to comply with Local Rule of Court 7.5, they are deemed withdrawn.[24] Nevertheless, the Court will address the merits of McKee's motions to avoid wasting judicial time and resources.

### B. McKee's Motions Fail on the Merits

Preliminary injunctive relief is an "extraordinary remedy never awarded as of right."[25] The purpose of a temporary restraining order or preliminary injunction is to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," pending further proceedings in the case.[26] Whether a temporary restraining order or preliminary injunction should issue is governed by a well-settled, four-factor test.[27] The Court must first consider the two "most critical" factors: likelihood of success on the merits and likelihood of irreparable harm absent the injunctive relief.[28] If these two "gateway" factors are satisfied, the Court must then weigh the balance of the equities and the public interest.[29] A court

---

[24] *See* LOCAL RULE OF COURT 7.5.
[25] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).
[26] *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).
[27] *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017).
[28] *See id.* at 179.
[29] *Id.* at 176, 179.

cannot grant a preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion" as to all four factors.[30] As the gateway factors suggest, "there must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."[31] Finally, in the prison context, an inmate's "request for injunctive relief must 'be viewed with great caution' because of the 'intractable problems of prison administration.'"[32]

McKee has not made a threshold showing of a likelihood of success on the merits. This is primarily because McKee's claims for injunctive relief are completely untethered to his federal lawsuit. In the instant case, McKee is suing SCI Rockview officials for alleged events that occurred primarily in May and June 2022. The instant five motions for preliminary injunctive relief concern events that purportedly occurred half a year later in December 2022. Additionally, McKee has failed to produce evidence (beyond his own allegations) establishing that he would succeed on the merits of his claims even if they were part of the instant lawsuit.[33]

McKee has likewise failed to carry his burden to show that he will be irreparably harmed if injunctive relief is denied. McKee's motions contain allegations of retaliation, but none of them establish by a "clear showing" that he

---

[30] *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018).
[31] *Ball v. Famiglio*, 396 F. App'x 836, 837-38 (3d Cir. 2010) (nonprecedential) (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)).
[32] *Milhouse v. Fasciana*, 721 F. App'x 109, 111 (3d Cir. 2018) (nonprecedential) (quoting *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).
[33] *See Holland*, 895 F.3d at 286.

will be irreparably harmed absent preliminary injunctive relief. McKee complains of issues like not receiving new bed linens and cleaning supplies and being denied access to the courts concerning his retaliation claims. Such allegations do not implicate irreparable harm. Moreover, as to McKee's assertion that he is being denied access to the courts, this claim is belied by his numerous filings in this case.[34] Additionally, Defendants have agreed to attempt to preserve any video footage requested in McKee's motions.[35]

As to McKee's more serious claim of sexual harassment by Inmate Manson, Defendants aver that multiple measures have been taken to prevent Manson from harassing other BMU inmates. Those measures include keeping Manson under "continuous direct observation" by correctional officers, ensuring that Manson is "cuffed, belted, shackled, and escorted by at least three corrections officers" when he is moved, and keeping McKee and Manson separated during out-of-cell activities (and, if their separate groups are combined, making sure both inmates are "secured in a therapeutic module").[36] Thus, McKee's allegations regarding Manson do not clearly establish irreparable harm absent injunctive relief. McKee, therefore, has not made the threshold showing for the two "most critical" factors for injunctive relief, and this Court's analysis is at an end.[37]

---

[34] *See, e.g.*, Docs. 25-28, 30, 33, 34-37.
[35] *See* Doc. 31 at 3, 5.
[36] *Id.* at 2.
[37] *See Reilly*, 858 F.3d at 179; *Holland*, 895 F.3d at 286.

The Court notes one final issue that McKee raises in several of his motions. McKee asks that his previously filed motion for a preliminary injunction (Doc. 7) and supporting brief (Doc. 8) be answered by Defendants. As noted above, that motion was terminated when this case was dismissed and closed due to McKee's failure to comply with the Court's administrative orders. McKee requests that this motion be reinstated, and that Defendants respond to it. The Court will grant McKee's request, reactivate his initial motion for preliminary injunctive relief, and require Defendants to respond to that motion within the time allotted by the Local Rules of Court. The Court further admonishes McKee that, should he continue to file unsupported and meritless motions for preliminary injunctive relief, those motions will be stricken from the record.

### III. CONCLUSION

McKee has failed to comply with the Local Rules, his claims for equitable relief are unconnected to the claims in his Section 1983 lawsuit, and he has not established a likelihood of success on the merits or irreparable harm. The Court will therefore deny McKee's various motions for preliminary injunctive relief. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge