## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEY McKEE, | No. 4:22-CV-01240 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| B. SALAMAN, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

### JULY 25, 2023

Plaintiff Jamey McKee was previously confined at the State Correctional Institution Rockview (SCI Rockview), in Bellefonte, Pennsylvania. He filed the instant *pro se* Section 1983[1] action, claiming that numerous SCI Rockview officials violated his constitutional rights. Presently pending is Defendants' motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motion.

## I.    BACKGROUND

McKee is currently incarcerated in SCI Frackville.[2] His lawsuit concerns alleged incidents at SCI Rockview during the summer months of 2022.[3] In early

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   *See* Doc. 56.

[3]   *See generally* Doc. 49.

August 2022, McKee filed the instant Section 1983 lawsuit asserting violations of his constitutional rights by SCI Rockview officials.[4]  McKee then filed an amended complaint on August 29, 2022.[5]  Defendants moved to dismiss his amended complaint,[6] and in response McKee filed a second amended complaint in January 2023.[7]  His sprawling second amended complaint spans 41 pages and contains 221 paragraphs.[8]

The gravamen of his lawsuit is that he was allegedly subjected to a campaign of retaliation by SCI Rockview officials because he filed a report under the Prison Rape Elimination Act (PREA) on May 11, 2022, alleging that his unit manager—defendant Michael Knapp—had sexually assaulted him the previous day.[9]  McKee claims that the retaliation included being improperly demoted in his BMU phase levels from a Level 3 to a Level 4,[10] being placed in a "recovery/hard" cell (with constant lighting and a "cement bed" and lacking a desk, shelf space, and an electrical outlet) for approximately a month,[11] being denied lunch and toilet paper

---

[4]  *See generally* Doc. 1.
[5]  *See generally* Doc. 6.
[6]  *See* Doc. 32.
[7]  *See generally* Doc. 49.
[8]  *See generally id.*
[9]  *See id.* ¶¶ 21, 28.
[10]  *Id.* ¶¶ 30-31, 34-37, 195.  According to McKee, "The BMU is a minimum 4[-]month program. Inmates designated to the BMU are expected to advance through the program by phases. It commences at phase 5 and ends at phase 1[,] which is held [sic] in general population. Movement to a lower treatment phase is based on the inmate's behavior and compliance with the inmate's Individual Recovery Plan (I.R.P.)."  *Id.* ¶ 20.
[11]  *Id.* ¶¶ 43-51, 196.

on a single day,[12] being issued false misconducts,[13] being denied access to grievances,[14] and being intentionally placed in harm's way so that he could be assaulted by another inmate.[15]

McKee also claims that multiple prison officials failed to protect him in violation of the Eighth Amendment,[16] exposed him to unconstitutional conditions of confinement (also in violation of the Eighth Amendment),[17] and infringed his Fourteenth Amendment substantive and procedural due process rights.[18]

McKee asserts 18 counts and names nine different prison officials: Superintendent Bobbi Jo Salamon, Deputy Superintendent Michael Rowe, BMU Unit Manager Michael Knapp, Hearing Examiner Christian Collins, and Corrections Officers Willis Holden, John Hayles, Dylan Steberger, Richard Burns, and Nathan Anna.[19]  Defendants now move for partial dismissal of McKee's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[20]

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but

---

[12]  *Id.* ¶¶ 53, 62-63, 65, 66, 194.
[13]  *Id.* ¶¶ 53, 56, 68, 132, 142, 153, 198.
[14]  *Id.* ¶¶ 183-88, 200.
[15]  *Id.* ¶¶ 97-126, 197.
[16]  *Id.* ¶¶ 190-93.
[17]  *Id.* ¶¶ 202-03.
[18]  *Id.* ¶¶ 204-08.
[19]  *Id.* ¶¶ 7-15; Doc. 38 at 2 (providing full names of Defendants).
[20]  *See generally* Doc. 58.

whether the claimant is entitled to offer evidence to support the claims."[21]  The

court must accept as true the factual allegations in the complaint and draw all

reasonable inferences from them in the light most favorable to the plaintiff.[22]  In

addition to the facts alleged on the face of the complaint, the court may also

consider "exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents" attached to a defendant's motion to dismiss if

the plaintiff's claims are based upon these documents.[23]

When the sufficiency of a complaint is challenged, the court must conduct a

three-step inquiry.[24]  At step one, the court must "tak[e] note of the elements [the]

plaintiff must plead to state a claim."[25]  Second, the court should distinguish well-

pleaded factual allegations—which must be taken as true—from mere legal

conclusions, which "are not entitled to the assumption of truth" and may be

disregarded.[26]  Finally, the court must review the presumed-truthful allegations

"and then determine whether they plausibly give rise to an entitlement to relief."[27]

---

[21]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[22]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[23]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[24]  *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[25]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[26]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[27]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[28]

Because McKee proceeds *pro se*, his pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[29]  This is particularly true when the *pro se* litigant, like McKee, is incarcerated.[30]

## III.  DISCUSSION

Before addressing Defendants' Rule 12 arguments, the sheer magnitude of McKee's second amended complaint requires an overview of the claims he is raising.

Under the First Amendment, McKee asserts eight counts of retaliation:

- Against Holden, for refusing a meal and toilet paper and for filing a false misconduct (Count 5);
- Against Rowe, for demoting McKee's BMU phase (Count 6);
- Against Knapp, for relocating McKee to a "recovery/hard" cell with difficult conditions of confinement (Count 7)[31];
- Against Steberger, Hayles, and Anna, for condoning and "stag[ing]" an assault on McKee by another inmate on June 2, 2022 (Count 8);
- Against Anna, for issuing a false misconduct (Count 9);
- Against Anna, for refusing to sign a witness form and not permitting access to the law library before a misconduct hearing (Count 10);
- Against Salamon, for limiting McKee's grievances (Count 11);
- Against Collins, for finding McKee guilty of a misconduct and not providing adequate due process protections (Count 12).

---

[28]  *Iqbal*, 556 U.S. at 681.
[29]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[30]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[31]  Defendants do not challenge the sufficiency of Count 7.

Under the Eighth Amendment, McKee asserts four counts of failure to protect and two counts of unconstitutional conditions of confinement:

- Against Steberger, Hayles, and Anna, for failing to protect McKee from assault by another inmate on June 2, 2022 (Count 1);
- Against Burns, for failing to protect McKee from assault by another inmate on August 1, 2022 (Count 2);
- Against Salamon, for failing to protect McKee from assault by another inmate on August 1, 2022 (Count 3);
- Against Knapp, for failing to protect McKee from assault by another inmate on August 1, 2022 (Count 4);
- Against Holden, for unconstitutional conditions of confinement for denying a meal and denying toilet paper for a day (Count 13);
- Against Collins, for unconstitutional conditions of confinement for ignoring a "serious medical emergency" and sanctioning McKee to disciplinary segregation (Count 14).

Under the Fourteenth Amendment, McKee asserts two counts for violations of substantive due process and two counts for violations of procedural due process:

- Against Collins, alleging a substantive due process violation for "forc[ing]" McKee to a hearing for misconduct 601647 and failing to provide procedural protections (Count 15);
- Against Collins, alleging a substantive due process violation with regard to misconduct 601647 by sanctioning McKee to disciplinary confinement "for exhibiting a serious medical emergency" (Count 16);
- Against Collins, alleging a procedural due process violation regarding misconduct 601647 for failing to provide certain procedural protections (Count 17);
- Against Collins, alleging a procedural due process violation regarding misconduct 601665 for sanctioning McKee to disciplinary confinement "with no evidence to support the charge" and for not allowing McKee to present evidence for the misconduct (Count 18).

Many of McKee's claims fail to plausibly state a claim for relief.  The Court will review each of his 18 counts in turn, grouped according to the constitutional amendment allegedly infringed.

### A.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[32]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[33]

There are a variety of ways to establish causation for a First Amendment retaliation claim.  One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[34]  When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected

---

[32]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[33]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[34]  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

conduct and the adverse action is often measured in days rather than weeks or months.[35]  However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[36]  Another approach is to demonstrate "a pattern of antagonism coupled with timing."[37]  Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[38]

Defendants do not challenge the first element of McKee's retaliation claims, conceding that filing a PREA report is protected conduct under the First Amendment.  They also do not question whether McKee has plausibly pled adverse actions. They instead point to deficiencies with McKee's claims as to the third element—causation.

The Court begins with Count 5, where McKee claims that Holden retaliated against him by refusing to give him toilet paper and a meal and by issuing him a false misconduct (# 601647) on or about May 19, 2022.[39]  Defendants assert that McKee has failed to plead causation as to his claim against Holden.  The Court disagrees.  Misconduct 601647 was ostensibly issued eight days after McKee

---

[35]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[36]  *Id.*

[37]  *DeFlaminis*, 480 F.3d at 267.

[38]  *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

[39]  The Court notes that it is not clear whether McKee is claiming that Holden issued misconduct 601647.  Defendants interpret the second amended complaint as alleging as much.  *See* Doc. 60 at 8.

submitted the PREA report.[40]  Moreover, McKee alleges that, immediately after reporting the alleged sexual assault, Holden came to his cell and told him, "f[rom] now on, you get nothing, you will be tortured and possibly die in this prison for trying to lie on Knapp!"[41]  McKee also alleges that, in an attempt to report the assault to senior prison officials, he hung a handwritten sign outside his cell stating, "I was SEXUALLY ASSAULTED please get lieutenant," and that Holden inspected the sign and then "ripped it off" the cell door.[42]  These allegations are sufficient to establish knowledge of the PREA complaint and causation for the purported adverse actions by Holden.

In Count 6, McKee alleges that Rowe retaliated against him by demoting his BMU phase one day after McKee submitted the PREA report.  Again, the temporal proximity of the adverse action is unusually suggestive.  McKee further avers that, when he asked Rowe why his phase had been demoted, Rowe responded, "because you put a false PREA report on [Knapp]."[43]  Together, these allegations suffice to plead causation.

In Count 8, McKee asserts that Steberger, Hayles, and Anna retaliated against him when they "condoned and staged" an assault by inmate Henry Barber

---

[40]  It is also unclear exactly when misconduct 601647 was issued, and McKee did not include a copy of this misconduct with any iteration of his pleadings.  He avers that he received a copy of the misconduct on May 19, 2022.  *See* Doc. 49 ¶¶ 53, 56, 68.

[41]  Doc. 49 ¶ 23 (alteration omitted).

[42]  *Id.* ¶¶ 24-26.

[43]  *Id.* ¶ 36.

on McKee on June 2, 2022.  McKee claims that, on May 25, 2022, Barber

threatened to physically assault him, so he reported Barber's threat "via request

slip" to Salamon, Steberger, and Hayles on either May 25, 26, or 27.[44]  McKee

avers that on June 1, 2022, Barber threatened him again, this time promising to

throw feces on him the next day during recreation, so McKee immediately reported

the threat to Hayles and asked not to be placed in a cage next to Barber.[45]  McKee

claims that Hayles responded by saying, "I'm not preventing nothing, Barber will

be placed next to you, these are the type of things that happen when you submit

PREA reports against staff."[46]  As to Steberger, McKee provides no allegations

that could indicate that Steberger had knowledge of the PREA report or that he

placed McKee next to Barber to retaliate for McKee's protected conduct.[47]

Additionally, there are no allegations that Anna knew of Barber's threats against

McKee such that Anna could play a deliberate role in the purported "condoning

and staging" of an assault.  Accordingly, Count 8 must be dismissed as to

Steberger and Anna.

In Count 9, McKee asserts that Anna retaliated against him by issuing a false

misconduct (# 601665) for refusing to obey an order.  McKee claims that, after

---

[44]  *Id.* ¶¶ 101-02.

[45]  *Id.* ¶¶ 106, 108.

[46]  *Id.* ¶ 109.

[47]  A plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"  *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

being found guilty of the misconduct, Anna approached his cell and said, "[H]a ha we got your ass, you won't be making false P.R.E.A. reports now or this is what will happen."[48]   Again, alleged statements like this suffice to establish causation at the pleading stage.

In Count 10, McKee claims that Anna retaliated against him by refusing to sign a witness form and refusing to allow McKee to attend law library to review the misconduct policy before the hearing for misconduct 601647.[49]   This count will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, as the alleged adverse actions—whether considered alone or collectively—are *de minimis*.[50]   That is, they are insufficient to deter a person of ordinary firmness from exercising his First Amendment rights.[51]

In Count 11, McKee alleges that Salamon retaliated against him by refusing to allow him to file additional prison grievances.  He claims that on July 1, 2022,

---

[48]   Doc. 49 ¶ 90.

[49]   McKee claims that he was without his own copy of the prison misconduct policy because of cell "restrictions."  *Id.* ¶ 87.

[50]   *See Watson*, 834 F.3d at 423 (explaining that adverse action "need not be great," but it does need to be "more than *de minimis*." (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

[51]   *See, e.g.*, *Turner v. Johnson*, No. 17-cv-541, 2020 WL 6323698, at *6 (D.N.J. Oct. 28, 2020) (dismissing claim that plaintiff was prevented from visiting law library one afternoon in retaliation for filing grievances and lawsuit); *Meeks v. Schofield*, 625 F. App'x 697, 701-02 (6th Cir. 2015) (denial of access to law library on one occasion was *de minimis* conduct that did not constitute an adverse action); *see also Miller v. Sanchez*, No. 20-cv-06-GW, 2020 WL 528010, at *6 (C.D. Cal. Feb. 3, 2020) (finding that assignment to a job that conflicted with law library access for a single day is *de minimis* and does not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment activities); *Springfield v. Khalit*, No. 2:17-cv-2675, 2019 WL 1745872, at *2 (E.D. Cal. Apr. 18, 2019) (finding "the denial of law library access on one occasion, without more, does not constitute an adverse action").

Salamon rhetorically asked him, "Did you learn your lesson yet about filing false PREA reports?" and noted that she had cut off his ability to file grievances.[52] These allegations are sufficient to plead causation.

Finally, in Count 12, McKee avers that Collins—the hearing examiner—retaliated against him by finding him guilty of misconduct 601647 and "tacitly participat[ing]" in the retaliatory actions of Anna.  This claim fails because McKee has not plausibly alleged that Collins had knowledge of the PREA report such that he could retaliate against McKee for filing it (nor does he allege that Collins would have any reason to retaliate), and therefore causation is lacking.[53]  Accordingly, this claim will be dismissed as well.

### B.    Eighth Amendment Failure to Protect

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety—sometimes referred to as a failure-to-protect claim—the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[54]  In this context, deliberate indifference is a subjective standard; that is, "the prison official-

---

[52] *Id.* ¶¶ 185-87.
[53] *See Moore*, 461 F.3d at 351.
[54] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

defendant must actually have known or been aware of the excessive risk to inmate safety."[55]  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[56]

McKee's failure-to-protect claims involve two incidents where Barber either threw urine on him or spit on him (or both).  McKee claims that, on June 2, 2022, he was placed in an outdoor recreation cage next to Barber's cage and Barber made good on previous threats by throwing urine on McKee and spitting on him.[57] McKee additionally alleges that on August 1, 2022, while in the BMU group activities room (and following additional threats of violence from Barber), Barber spit on him.[58]

Defendants challenge the objective prong of McKee's claims, contending that being attacked with bodily fluids (like urine and saliva) does not pose a substantial risk of serious harm.  They also dispute whether McKee has satisfied the subjective prong, arguing that Defendants took appropriate measures to keep McKee safe from physical violence at the hands of Barber.  The Court does not agree that inmate-on-inmate assaults with bodily fluids are categorically exempt from Eighth Amendment failure-to-protect claims, and additionally notes that

---

[55] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[56] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).
[57] *See* Doc. 49 ¶¶ 119.
[58] *See id.* ¶¶ 171, 176.

Barber also allegedly threatened other types of physical violence. The Court will, however, analyze whether McKee has plausibly alleged deliberate indifference by the named Defendants.

As to McKee's first failure-to-protect claim in Count 1, that claim survives as to Steberger and Hayles. McKee's allegations are sufficient to establish a substantial risk to his safety following Barber's threats of physical violence, that Steberger and Hayles had knowledge of those threats, and that they were deliberately indifferent to the risk of assault.[59] Count 1 will be dismissed against Anna, as there are no allegations that Anna was on notice regarding Barber's threats against McKee.

Counts 3 and 4 are sufficient to state failure-to-protect claims against Salamon and Knapp. McKee avers (and submits evidence) that he repeatedly contacted Salamon about Barber's threats and no action was taken. For example, McKee alleges that he submitted a request slip to Salamon shortly after Barber's May 25 threat of violence[60] and sent a letter to Salamon on June 23, 2022,[61] reiterating Barber's threats and McKee's fear for his own safety. McKee additionally alleges that on June 21, after Barber made his third threat of physical

---

[59] *See* Doc. 49 ¶¶ 101, 102, 106, 108, 109, 111, 113.
[60] *See id.* ¶ 102.
[61] *See id.* ¶ 169; Doc. 6-6 at 2.

violence, McKee immediately informed Knapp about the threat and Knapp

responded that he "does not care."[62]

Count 2, however, must be dismissed.  McKee claims that Burns failed to

protect him from the August 1 assault, but there are no factual allegations that

Burns was aware of Barber's previous assaultive conduct or threats.  Moreover,

McKee repeatedly describes Burns' actions as negligent for failing to properly

monitor the inmates in the activities room,[63] but negligent behavior is not the same

as deliberate indifference.

### C.    Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . .

which house persons convicted of serious crimes[] cannot be free of discomfort."[64]

Nevertheless, the state cannot subject an inmate to cruel and unusual punishment

or "inhumane treatment," such as deprivation of "identifiable human need[s]" like

"food, clothing, shelter, medical care, and reasonable safety[.]"[65]  To prevail on an

Eighth Amendment conditions-of-confinement claim, a plaintiff must show both

objective and subjective elements.[66]  Objectively, the prisoner must demonstrate

that "the prison official deprived the prisoner of the minimal civilized measure of

---

[62]   Doc. 49 ¶¶ 165-68.

[63]   *See id.* ¶¶ 173, 175, 191.

[64]   *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

[65]   *See Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).*

[66]   *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)

life's necessities," often referred to as a "sufficiently serious" deprivation.[67]  "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'"[68]  Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[69]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[70]

Neither of McKee's conditions-of-confinement claims satisfy the objective requirement of stating a deprivation of life's necessities.  In Count 13, McKee claims that Holden refused a single meal and denied him toilet paper for a day.  These allegations plainly do not rise to the level of an Eighth Amendment violation.[71]

---

[67]  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).

[68]  *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2023) (quoting *Farmer*, 511 U.S. at 834).

[69]  *Chavarriaga*, 806 F.3d at 226 (citing *Farmer*, 511 U.S. at 834).

[70]  *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

[71]  *See, e.g.*, *Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (nonprecedential) (deprivation of 3 meals over 2 days not a constitutional violation, but denial of 16 meals over 23 days may implicate Eighth Amendment); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (nutritionally inadequate restricted diet for 14 consecutive days may violate constitution); *Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999) (denial of food "on many occasions for three to five days at a time" sufficient to state Eighth Amendment claim); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (denial of one out of every nine meals for five-month span likely not a constitutional violation); *Robles v. Coughlin*, 725 F.2d 12, 13, 15-16 (2d Cir. 1983) (denial of all meals for 12 days, 3 of which were consecutive, over 53-day span implicated Eighth Amendment); *Smith v. Wilson*, No. 3:13-cv-771, 2014 WL 4626664, at *1, 5-6 (M.D. Pa. June 26, 2014) (denial of 15 meals over 27 days sufficient to state an Eighth Amendment claim), *report and recommendation rejected in part on different grounds*, No.

In Count 14, McKee claims that Collins, by sanctioning him to 30 days' disciplinary segregation for "exhibiting a serious medical emergency," violated the Eighth Amendment.[72]  Not so.  The United States Court of Appeals for the Third Circuit has repeatedly held that placement in administrative or disciplinary segregation for periods much longer than those alleged by McKee, without more, does not implicate an Eighth Amendment violation.[73]  Moreover, Collins sanctioned McKee to disciplinary segregation following a finding of guilt on misconduct 601665 for refusing to obey an order, not for having a medical emergency.[74]  Counts 13 and 14 will therefore be dismissed.

---

3:13-cv-771, 2014 WL 4630713 (M.D. Pa. Sept. 15, 2014); *see also Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (nonprecedential) (seven days without mattress, shower, soap, recreation, or toilet paper due to suicide risk not unconstitutional); *Adderly v. Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (nonprecedential) (seven days without clothing, toiletries, mattress, and shower was harsh but not a deprivation of life's necessities); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) (nonprecedential) (three days without a mattress and having to sleep on a metal bedframe did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothing, mattress, or bedding not Eighth Amendment violation).

[72]  Doc. 49 ¶ 203.

[73]  *See Griffin v. Vaughn*, 112 F.3d 703, 705, 709 (3d Cir. 1997) (finding no Eighth Amendment violation for inmate's placement in administrative segregation for 15 months during pendency of disciplinary proceedings); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992) ("Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman[,] or totally without penological justification."), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000); *Johnson v. Burris*, 339 F. App'x 129, 131 (3d Cir. 2009) (nonprecedential) (holding that administrative segregation and loss of minor privileges did not state a conditions-of-confinement claim); *Wilson v. Hogsten*, 269 F. App'x 193, 195 (3d Cir. 2008) (nonprecedential) (finding that 12-month placement in the SHU—without alleging facts showing a sufficiently serious deprivation of "life's necessities"—was insufficient to state an Eighth Amendment claim).

[74]  *See* Doc. 6-5 at 2.

### D.   Fourteenth Amendment Substantive Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution contains both procedural and substantive protections.[75]  The substantive component of the Due Process Clause safeguards against certain deprivations of individuals' "life, liberty, and property" by state actors "regardless of the fairness of the procedures used to implement them."[76]  In a substantive due process challenge to governmental conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[77]

A substantive due process claim, however, cannot be maintained when the alleged constitutional violation is "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment."[78]  In such situations, the claim must be analyzed under the rubric of the more specific constitutional provision rather than substantive due process,[79] an "unchartered area" with "scarce and open-ended" guideposts.[80]  The "more-specific-provision rule" will often apply when the challenged conduct underlying the substantive due process claim is the same

---

[75]   *See generally* U.S. Const. amend. XIV, § 1.

[76]   *L.R. v. Sch. Dist. Of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

[77]   *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

[78]   *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

[79]   *Id.*

[80]   *Collins*, 503 U.S. at 125.

conduct that implicates a more explicit constitutional provision.[81]

McKee claims that Collins violated his substantive due process rights by (1) forcing McKee to a hearing for misconduct 601647 without a misconduct report, without allowing McKee to read a waiver before signing it, and without allowing McKee to properly prepare for the hearing (Count 15); and (2) sanctioning McKee to disciplinary confinement for "exhibiting a serious medical emergency" in relation to misconduct 601665 (Count 16).[82]  Neither assertion plausibly states a substantive due process claim.

McKee's allegations in Count 15 fail for two reasons.  First, the conduct he describes—even if true—does not come close to implicating "egregious" or "conscience-shocking" behavior by a government official.  Second, McKee is simply repackaging his procedural due process claim from Count 17 into a substantive due process claim, a tactic that is barred by the more-specific-provision rule.

His allegations in Count 16 fail for multiple reasons as well.  Again, the conduct McKee describes—sanctioning a prisoner accused of a misconduct to 30 days' disciplinary segregation—simply does not shock the conscience.  Additionally, McKee's allegations that he was sanctioned for having a medical emergency are plainly contradicted by the misconduct documents he attached to an

---

[81]   *See Porter*, 974 F.3d at 448.
[82]   Doc. 49 ¶¶ 204-05.

earlier iteration of his pleadings.  As shown in those documents, and as described

above, Collins sanctioned McKee to disciplinary segregation following a finding of

guilt on misconduct 601665 for refusing to obey an order, not for having a medical

emergency.[83]  Consequently, both of McKee's substantive due process claims are

legally deficient and must be dismissed.

### E.      Fourteenth Amendment Procedural Due Process

To plausibly state a Section 1983 claim for infringement of procedural due

process rights, "a plaintiff must allege that (1) he was deprived of an individual

interest that is encompassed within the Fourteenth Amendment's protection of

'life, liberty, or property,' and (2) the procedures available to him did not provide

'due process of law.'"[84]  If a plaintiff cannot identify a protected interest that is "at

stake," the analysis is at an end.[85]

In Counts 17 and 18, McKee claims that the procedures he was afforded in

his misconduct hearings did not provide due process of law, but he ignores the first

step in the procedural due process analysis.  Nowhere in his second amended

---

[83]   *See* Doc. 6-5 at 2.  While McKee disputes the findings and conclusions of the hearing examiner, the misconduct documents speak for themselves and were submitted as part of McKee's pleadings.

[84]   *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[85]   *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

complaint has he identified a protected liberty interest that was infringed.  McKee points only to being sanctioned to disciplinary segregation for 90 days.[86]

The Supreme Court of the United States, however, has held that disciplinary segregation alone—under conditions that mirror those "imposed upon inmates in administrative segregation and protective custody"—generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.[87]  And the Third Circuit has repeatedly held that disciplinary segregation for much longer than that which McKee experienced does not rise to the level of an atypical and significant hardship.[88]  McKee has therefore failed to identify a protected liberty interest, so his Fourteenth Amendment procedural due process claims must be dismissed.

### F.   Official Capacity Claims

McKee sued all Defendants in their individual and official capacities.[89]  However, any official capacity claim seeking monetary damages from state

---

[86]  In his opposition brief, McKee claims that he has been in some form of restricted housing for "5 years," which he argues is an atypical and significant hardship.  *See* Doc. 62 at 37.  But his procedural due process claims in the instant case have nothing to do with his years of placement in restricted housing—they concern hearings and adjudications regarding two misconducts, for which McKee was subjected to disciplinary segregation for 90 days.

[87]  *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).

[88]  *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); *Dunbar v. Barone*, 487 F. App'x 721, 725 (540 days).

[89]  *See* Doc. 49 ¶ 16.

officials is barred by Eleventh Amendment sovereign immunity.  Furthermore, as to McKee's requests for prospective injunctive relief, those claims are moot.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[90]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[91]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[92]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[93]

McKee seeks compensatory and punitive damages.[94]  To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity.  McKee also seeks various forms of injunctive relief against SCI Rockview officials, such as ending the

---

[90]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[91]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[92]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[93]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[94]  Doc. 49 ¶¶ 217, 218.

alleged retaliation and transferring him out of SCI Rockview.[95]  Those claims for

relief must be dismissed as moot because McKee has already been transferred to a

different state correctional institution.[96]  Finally, McKee's single claim for

declaratory relief that his constitutional rights were violated is retrospective, rather

than prospective, in nature.[97]  Thus, all official capacity claims must be dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to

dismissal under Rule 12(b)(6) should receive leave to amend unless amendment

would be inequitable or futile."[98]  McKee has already amended his pleadings twice,

and thus has had three opportunities to "tell his story."[99]  Further leave to amend

will be denied as futile because McKee has failed to cure numerous deficiencies

even after "amendments previously allowed."[100]

To summarize, the following Section 1983 claims will be dismissed: Count

1 as to Anna, Count 2, Count 8 as to Steberger and Anna, Count 10, and Counts 12

---

[95]  *See id.* ¶¶ 210-16.

[96]  *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

[97]  *See* Doc. 49 ¶ 209.

[98]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[99]  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).

[100]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones*, 944 F.3d at 483 (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

through 18.  This case will proceed on the following claims: Count 1 as to Steberger and Hayles, Counts 3 through 7, Count 8 as to Hayles, Count 9, and Count 11.

## V.   CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge