# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMEY McKEE,

        Plaintiff,

    v.

B. SALAMAN, *et al.*,

        Defendants.

No. 4:22-CV-01240

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 20, 2024

Plaintiff Jamey McKee is a serial *pro se* litigant who was previously incarcerated at the State Correctional Institution, Rockview (SCI Rockview), located in Bellefonte, Pennsylvania.[1] He filed the instant *pro se* Section 1983[2] action claiming constitutional violations by numerous SCI Rockview officials. Presently pending is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. Because McKee has not responded to Defendants' Rule 56 motion and thus has failed to carry his burden on his remaining Section 1983 claims, the Court will grant Defendants' unopposed motion for summary judgment.

---

[1]    McKee is currently incarcerated at SCI Somerset. *See* Doc. 70.

[2]    42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    FACTUAL BACKGROUND[3]

McKee initiated this *pro se* Section 1983 action in August 2022.[4]  In his lengthy second amended complaint—the operative pleading in this action—he primarily alleged a campaign of retaliation in violation of the First Amendment by SCI Rockview officials for filing a report under the Prison Rape Elimination Act (PREA) in May 2022, in which he alleged that his Unit Manager—defendant M. Knapp—had sexually assaulted him.[5]  He also claimed that multiple prison officials had failed to protect him in violation of the Eighth Amendment, exposed him to unconstitutional conditions of confinement (also in violation of the Eighth Amendment), and infringed his Fourteenth Amendment substantive and procedural due process rights.[6]

In total, McKee asserted 18 counts and named nine different prison officials, including Superintendent Bobbi Jo Salamon, Deputy Superintendent Michael

---

[3]    Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Defendants properly filed their statement of material facts, (Doc. 100), but McKee failed to respond to that statement.  Accordingly, the Court will deem admitted the facts in Defendants' Rule 56.1 statement.  *See* LOCAL RULE OF COURT 56.1.

[4]    *See generally* Doc. 49.

[5]    *See* Doc. 64 at 2.

[6]    *Id.* at 3.

Rowe, BMU Unit Manager Michael Knapp, Hearing Examiner Christian Collins, and Corrections Officers Willis Holden, John Hayles, Dylan Steberger, Richard Burns, and Nathan Anna.[7]

Defendants moved for partial dismissal of McKee's second amended complaint.[8]  Because that pleading was so dense, the Court first broke down McKee's various Section 1983 claims by category, *i.e.*, First Amendment retaliation (Counts 5-12), Eighth Amendment failure to protect (Counts 1-4), Eighth Amendment conditions of confinement (Counts 13-14), Fourteenth Amendment substantive due process (Counts 15-16), and Fourteenth Amendment procedural due process (Counts 17-18), and provided a brief synopsis of each of the 18 claims.[9]

After an exhaustive sufficiency analysis, the Court permitted several retaliation and failure-to-protect claims to proceed.[10]  Specifically, the following claims survived Rule 12(b)(6) scrutiny: (1) retaliation against Holden for issuing misconduct #601647 (Count 5); (2) retaliation against Rowe by demoting McKee's BMU phase one day after McKee filed the PREA report (Count 6); (3) retaliation against Knapp for relocating McKee to a "recovery/hard" cell with harsh

---

[7]  *Id.*
[8]  Doc. 58.
[9]  *See* Doc. 64 at 5-6.
[10]  *See id.* at 7-23; Doc. 65 ¶¶ 1-2.

3

conditions of confinement (Count 7); (4) retaliation against Hayles for permitting another inmate to assault McKee with urine and spit (Count 8); (5) retaliation against Anna for issuing an allegedly false misconduct #601665 (Count 9); (6) retaliation against Salamon for refusing to allow McKee to file additional prison grievances (Count 11); (7) failure to protect against Steberger and Hayles for permitting assault by another inmate on June 2, 2022 (Count 1); and (8) failure to protect against Salamon and Knapp for permitting assault by another inmate on August 1, 2022 (Counts 3 and 4).[11]  All other claims were dismissed, including McKee's official capacity claims, and further leave to amend was denied.[12]

Defendants now move for summary judgment on McKee's remaining Section 1983 claims.[13]  McKee has failed to respond to Defendants' Rule 56 motion in any way.  McKee, who is a frequent litigant in this Court, is well aware of the Local Rules of Court and specifically the requirements of Local Rule 7.6, which generally requires a brief in opposition if a party opposes a motion.[14]  The deadline for a Rule 56 response has passed.  McKee has neither filed a response nor sought an extension of time to do so.  Defendants' unopposed motion for summary judgment is therefore ripe for disposition.

---

[11]  *See* Doc. 64 at 7-21.
[12]  *See id.* at 7-24.
[13]  Doc. 91.
[14]  *See, e.g.*, Doc. 2-3 (providing excerpts of Federal Rules of Civil Procedure and Local Rules of Court, including Local Rules 7.6, 7.8, and 56.1).

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[15]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[17]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[18]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[19]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[20]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury

---

[15]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[16]   FED. R. CIV. P. 56(a).
[17]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[18]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[19]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[20]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

could reasonably find for the [nonmovant]."[21]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[22]

## III.    DISCUSSION

Defendants contend that McKee is unable to satisfy his Rule 56 burden because he cannot adduce any competent evidence to establish a genuine issue of material fact as to his Section 1983 claims.  Defendants also assert that McKee failed to exhaust administrative remedies.  The Court agrees with Defendants and finds that McKee has failed to carry his Rule 56 burden, so judgment must be entered in Defendants' favor on the remaining constitutional claims.

### A.    Failure to Oppose Rule 56 Motion

First, McKee has failed to carry his burden at summary judgment because he has not opposed Defendants' Rule 56 motion in any way.  McKee has not identified any record evidence that would rebut Defendants' contention (and supporting evidence) that they took no action that would violate McKee's constitutional rights.  McKee has not, for example, pointed to a declaration or affidavit, witness statements, documentary support, or any other evidence that could sustain a verdict in his favor.  In fact, McKee has not even responded to

---

[21] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[22] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

Defendants' Rule 56 motion, meaning that—pursuant to Local Rule 7.6—the motion is deemed unopposed.[23]

At summary judgment, "the non-moving party *must oppose the motion* and, in doing so, may not rest upon the mere allegations or denials of his pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice."[24] Moreover, "[t]he court need consider only the cited materials" when ruling on a motion for summary judgment.[25]  No materials have been provided or cited by McKee in opposition to Defendants' Rule 56 motion.  Thus, because McKee has failed to establish that there is a genuine dispute of material fact for trial, the Court must grant Defendants' unopposed motion for summary judgment.

## B.    Failure to Exhaust Administrative Remedies

A second reason summary judgment must be granted in Defendants' favor is that McKee failed to exhaust administrative remedies as to his remaining claims. The Prison Litigation Reform Act of 1995 (PLRA)[26] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged

---

[23]  *See* LOCAL RULE OF COURT 7.6 (stating that failure to file a brief in opposition to a motion, including one for summary judgment, results in said motion being deemed "unopposed").

[24]  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (emphasis added) (alteration omitted) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).

[25]  FED. R. CIV. P. 56(c)(3).

[26]  42 U.S.C. § 1997e *et seq.*

constitutional violations.[27]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[28]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

is incarcerated.[29]

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.[30]  If informal resolution attempts do not solve the problem,

the first step is to file a written grievance (using form DC-804, Part 1) with the

Facility Grievance Coordinator within 15 working days after "the event upon

which the claim is based."[31]  An adverse decision by the grievance coordinator

must be appealed to the Facility Manager within 15 working days of the initial-

review response or rejection.[32]  Finally, an adverse decision by the Facility

Manager must be appealed to "Final Review" with the Secretary's Office of

---

[27] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[28] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[29] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[30] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[31] DC-ADM 804 § 1(A)(3)-(5), (8).

[32] *Id.* § 2(A)(1).

Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[33]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other conditions, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[34]

The undisputed facts of this case demonstrate that McKee failed to exhaust administrative remedies.  McKee filed approximately 25 grievances during May 2022, many of which complained about "retaliation."[35]  Those grievances were either withdrawn, procedurally rejected, or denied on the merits.[36]  None of them, however, were appealed to first-level review with the Facility Manager or to final review with the SOIGA.[37]  McKee has not proffered *any* evidence that he exhausted his remaining Section 1983 claims in this case or that administrative remedies were made unavailable.  McKee's claims are thus procedurally defaulted

---

[33]    *Id.* § 2(B)(1).
[34]    *Id.* § 1(A)(11).
[35]    *See* Doc. 100-28.
[36]    *See id.*
[37]    *See id.*

and, without any excuse for this default, judgment must be granted in Defendants'
favor for failure to exhaust administrative remedies.

### C.    Merits of Claims

A final reason that summary judgment must be granted in Defendants' favor
is that, upon consideration of the Rule 56 record, there is no evidence that would
sustain a verdict in McKee's favor on his remaining Section 1983 claims.

### 1.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an
inmate still retains First Amendment protections when they are "not inconsistent"
with prisoner status or with the "legitimate penological objectives of the
corrections system."[38]  To establish a First Amendment retaliation claim, a plaintiff
must show that (1) "he was engaged in constitutionally protected conduct," (2) he
suffered an "adverse action" by prison officials sufficient to deter a person of
ordinary firmness from exercising his First Amendment rights, and (3) the
plaintiff's protected conduct was a "substantial or motivating factor" in the prison
officials' decision to take the adverse action.[39]

---

[38]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d
775, 781 (3d Cir. 2010)).
[39]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d
523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[40] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[41] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[42] Another approach is to demonstrate "a pattern of antagonism coupled with timing."[43] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[44] Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[45]

If a prisoner-plaintiff can establish a *prima facie* retaliation case, the burden shifts to the defendant or defendants to show that "they would have made the same

---

[40] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[41] *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[42] *Id.*

[43] *DeFlaminis*, 480 F.3d at 267.

[44] *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

[45] *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[46]  This is often referred to as the "same decision defense."[47]

McKee's retaliation claims fall short for two reasons.  First, he has failed to proffer evidence to support his *prima facie* retaliation cases.  Although his allegations were sufficient to rebut Defendants' motion to dismiss, they are insufficient at the Rule 56 stage.  As noted above, at summary judgment, "the non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice."[48]

Second, Defendants have put forth undisputed evidence that most of the alleged retaliatory actions were taken for legitimate penological reasons, thus satisfying the "same decision" defense.  For example, as to McKee's claim that Rowe retaliatorily demoted his BMU phase (Count 6), the record shows that McKee's BMU phase was reduced from phase 3 to phase 4 due to McKee's refusal to participate in BMU programming and his negative, argumentative behavior.[49] In Count 5, McKee alleged that Holden retaliatorily issued him a false misconduct,

---

[46]   *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).
[47]   *Id.*
[48]   *Jutrowski*, 904 F.3d at 288-89; *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) ("The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way.").
[49]   Doc. 100 ¶¶ 3-7.

yet that misconduct was issued because McKee possessed contraband (the RHU

Law Library's copy of the PREA Policy) in his cell.[50]  In Count 7, McKee alleged

that he was retaliatorily transferred to a "hard" cell, but the record reflects that (a)

the cell change was the result of a plumbing issue and undertaken at McKee's

request, and (b) the cell to which McKee was transferred was not a "hard" cell but

rather a normal BMU cell.[51]  Count 9 alleged that Anna retaliatorily issued a false

misconduct for refusing to obey an order, but the Hearing Examiner reviewed

video footage of the incident and found the misconduct charge substantiated.[52]

Finally, in Count 11, McKee asserted that Salamon retaliatorily limited his ability

to file grievances, but the record establishes that McKee was put on grievance

restriction for filing numerous frivolous grievances in short succession.[53] [54]

### 2.    Eighth Amendment Failure to Protect

"Being violently assaulted in prison is simply not part of the penalty that

criminal offenders pay for their offenses against society."[55]  Prison officials,

---

[50]  *Id.* ¶¶ 42-44.

[51]  *Id.* ¶¶ 21-36.

[52]  *Id.* ¶¶ 84-86.

[53]  *Id.* ¶¶ 88-103.

[54]  Count 8—another retaliation claim that survived Defendants' motion to dismiss—alleged that Steberger and Hayles staged an inmate-on-inmate assault on McKee on June 2, 2022. However, because there is no merit to this claim, *see infra* Section III(C)(2), McKee has failed to establish an adverse action and thus no "same decision" defense is relevant or necessary.

[55]  *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), *abrogated on other grounds as noted by Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).

therefore, have "a duty to protect prisoners from violence at the hands of other prisoners."[56]  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[57]

To establish an Eighth Amendment failure-to-protect claim against a prison official, the inmate must prove that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[58]  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[59]  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[60]

McKee's second amended complaint asserts two incidents of failure to protect: *first*, McKee contends that on June 2, 2022, Steberger and Hayles failed to protect him from an assault by another inmate who purportedly threw urine on

---

[56]  *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 833).

[57]  *Farmer*, 511 U.S. at 834.

[58]  *Bistrian*, 696 F.3d at 367.

[59]  *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

[60]  *Id.* (quoting *Farmer*, 511 U.S. at 842).

McKee and spit on him; *second*, McKee avers that on August 1, 2022, Salamon and Knapp ignored his warnings about threats made by another inmate, which later resulted in that inmate spitting on McKee. With respect to the first incident, the Rule 56 record reflects an absence of evidence that McKee was contacted with urine or spit from another inmate.[61] The record additionally lacks any evidence that Steberger or Hayles knew about or staged the alleged inmate-on-inmate attack.[62] McKee's failure-to-protect claim in Count 1, therefore, fails to establish deliberate indifference, harm, or causation.

As to the August 1, 2022 incident, the Rule 56 record is devoid of evidence that McKee was spit on by another inmate.[63] Rather, the undisputed evidence shows that McKee fabricated this assault, as the two inmates were separated by a plexiglass barrier and therefore the other BMU prisoner could not have physically spit on McKee.[64] McKee's failure-to-protect claims in Counts 3 and 4, therefore, fail to establish harm or causation.

In summary, even if the Court were to reach the merits of McKee's remaining Section 1983 claims (despite his failure to oppose the instant Rule 56 motion and his failure to exhaust administrative remedies), Defendants' motion for

---

[61] *See* Doc. 100 ¶¶ 45-83.

[62] *See id.*

[63] *See id.* ¶¶ 108-13.

[64] *Id.* ¶ 112.

summary judgment would be granted.  That is because there is no record evidence of unconstitutional conduct by Defendants.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant Defendants' unopposed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge